UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WALTER SHAUNE SILVA,<br><br>                Plaintiff,<br>    v.<br><br>SANTANDER CONSUMER USA INC. et al.,<br><br>                Defendant. | CASE NO. 3:24-cv-06057-DGE<br><br>ORDER ON MOTION TO COMPEL ARBITRATION (DKT. NO. 41) |

**I****INTRODUCTION**

Before the Court is Defendant Santander Consumer USA Inc.'s motion to compel arbitration. (Dkt. No. 41.) The Court construes Plaintiff's declaration filed on September 24, 2025, as opposition to this motion. (Dkt. No. 44.) For the foregoing reasons, Santander's motion is GRANTED.

1   As a preliminary matter, the Court notes that there are several docket entries related to this motion that are untimely under the Local Rules.[1]  (*See* Dkt. Nos. 47, 51, 52.)  The Court could exercise its discretion to strike untimely pleadings that fail to comply with local rules, *see Ruele v. H.O. Seiffert Co.*, Case No. C08-1591 MJP, 2009 WL 10725375, at *1 (W.D. Wash. May 11, 2009) (citing *United States v. Warren*, 601 F.2d 471, 474 (9th Cir. 1979)), but in the interest of moving this litigation forward, will consider the contents of the untimely pleadings to the extent they present substantive arguments that assist with the resolution of this matter.

## II    BACKGROUND

On September 20, 2024, Plaintiff filed this lawsuit in Kitsap County District Court against Santander Consumer USA, Inc. ("Santander") and three Credit Reporting Agencies: Trans Union, LLC, Experian Information Solutions, Inc., and Equifax Information Services, LLC (collectively, the "CRAs").  (Dkt. No. 1-2 at 2.)  Plaintiff's complaint appears to allege claims for breach of contract, conversion, and violation of the Fair Credit Reporting Act related to an auto-finance contract.  (*Id.* at 3, 6.)  Trans Union LLC removed the case on December 27, 2024, based on federal question jurisdiction because Plaintiff invokes the Fair Credit Reporting Act.  (Dkt. No. 1.)

In support of its motion to compel, Santander states in January 2024, Plaintiff entered an installment sales contract with a car dealer to purchase a 2021 Kia Seltos.  (Dkt. Nos. 41 at 2; 42

---

[1] Under Local Civil Rule 7(d)(4), opposition papers to a motion to compel arbitration are due 21 days after the filing of the initial motion, and reply papers are due "no later than 28 days after the filing date of the motion."  Accordingly, Plaintiff's deadline for his opposition to the motion to compel arbitration was on or before October 7, 2025, and Santander's deadline for the reply was on or before October 14.  As for the "response"/surreply (Dkt. No. 52), the Court notes Plaintiff never sought leave to file a surreply, which is required under our local rules.  *See* LCR 7(g).  To the degree the Court considers Plaintiff's surreply, it will not consider "any text, including footnotes, which is not included" in the first 1,050 words.  LCR 7(e)(6); 7(g)(3).

at 2.) Santander financed the purchase of the vehicle, and the car dealer assigned the contract to Santander. (Dkt. Nos. 41 at 2; 42 at 2, 9.) Plaintiff acknowledges in his complaint that he took possession of the vehicle. (Dkt. No. 1-2 at 3.) According to Santander, Plaintiff's theory of the case is that he is "entitled to cease making payments on the vehicle because he was not provided with the original purchase contract for his inspection." (Dkt. No. 41 at 2.) The sales contract, which is included in a declaration in support of Santander's motion, contained an arbitration agreement. (Dkt. Nos. 41 at 3; 42 at 8.) The contract bears a watermark stamped with the phrase "Non-Authoritative Copy." (Dkt. No. 42 at 4–8.)

In its motion, Santander argues Plaintiff's claims against it cannot continue in this forum because the sales contract underlying this dispute includes a valid and enforceable arbitration agreement, and Plaintiff's claims fall within the scope of the agreement. (Dkt. No. 41 at 2–3.) Santander states that Plaintiff signed the contract (agreeing to the terms of the contract and the arbitration agreement contained therein) and signed a "separate boxed section" specifically agreeing to arbitrate his claims. (*Id.* at 4.) In response, Plaintiff asserts he has "never knowingly signed any original contract . . . that bore the words 'non-authoritative' stamped on every page." (Dkt. No. 44 at 1.) Santander counters by pointing out that the contract is "an electronic contract executed by [Plaintiff] using [his] electronic signature," and the "original" is the electronic copy that "resides in a document management system designated by [Santander] for the storage of authoritative copies of electronic records." (Dkt. No. 51 at 3) (quoting the contract signature acknowledgement in Dkt. No. 42 at 7).

### III     DISCUSSION

**A. Legal Standard**

The Federal Arbitration Act ("FAA") applies to contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2; *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015). In considering a motion to compel arbitration, the "court's role under the [FAA] . . . is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).[2] These gateway issues, however, "can be expressly delegated to the arbitrator where 'the parties clearly and unmistakably provide otherwise.'" *Brennan*, 796 F.3d at 1130 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). The party seeking to compel arbitration under the FAA bears the burden of proving by a preponderance of the evidence the existence of an agreement to arbitrate. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015); *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).

**B. Analysis**

The Court grants Santander's motion for two reasons. First, the Court has no reason to believe the arbitration agreement is invalid or unenforceable in this context. The Ninth Circuit and Supreme Court have "clearly stated" that the question of whether an arbitration agreement encompasses a dispute receives a "presumption of validity." *Branion v. Wallace*, Case No. 2:16-cv-07992-SVW-JC, 2017 WL 11633674, at *7 (C.D. Cal. Jan. 18, 2017) (citing *Mundi v. Union*

---

[2] Section 4 of the FAA provides a judicial remedy where a party seeks to compel arbitration. *See* 9 U.S.C. § 4. Under Section 4, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . of the subject matter of a suit arising out of the controversy between the parties," for an order compelling arbitration. *Id.*

1  *Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (citation omitted)).  That does not change
2  even if Plaintiff is challenging the enforceability of the contract as a whole.  *United Ass'n Loc.*
3  *Union No. 26 v. Big Rooter/Nelson Plumbing & Mech., Inc.*, No. C10–1425 MJP, 2011 WL
4  130335, at *2 (W.D. Wash. Jan. 14, 2011) (stating that a "presumption of arbitrability applies
5  even to disputes about the enforceability of the entire contract containing the arbitration clause,"
6  because "courts must treat the arbitration clause as severable from the contract in which it
7  appears, and thus apply the clause to all disputes within its scope [u]nless the [validity] challenge
8  is to the arbitration clause itself or the party disputes the formation of [the] contract'") (citing
9  *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 298 (2010) (alterations in original)).

10       Here, Plaintiff does not dispute that he voluntarily entered into a contract when he
11 purchased and took possession of the vehicle, nor does he dispute that the contract he signed
12 included an arbitration provision.  Neither does Plaintiff assert that the contents of the
13 watermarked contract are materially different than the contract he signed.  Rather, the only
14 argument in his response is that he "never knowingly signed any original contract . . . that bore
15 the words 'non-authoritative' stamped on every page."  (Dkt. No. 44 at 1.)  This statement does
16 not legitimately contest the validity or enforceability of the arbitration agreement or the contract
17 encompassing it.  In his surreply, Plaintiff rehashes this argument and raises various new
18 arguments: (1) Santander "contradicted its sworn disclosure" regarding the date the Parties
19 entered into the contract; (2) the disputed contract does not bear Santander's signature or name;
20 and (3) Santander "does not have first[-]hand knowledge of Plaintiff."  (Dkt. No. 52 at 4–6.)
21 Plaintiff also argues for the first time that he in fact purchased the vehicle on December 31,
22 2023, and attaches a document to the surreply in support of this contention.  (*Id.* at 2, 14.)
23 However, this document is not submitted with a declaration under penalty of perjury and the
24

Court therefore cannot consider it as evidence.[3] *See Ball v. Manalto, Inc.*, Case No. C16-1523 RSM, 2017 WL 1788425, at *3 (W.D. Wash. May 5, 2017) (considering assertions in an opposition brief without declaration or evidence in support as being "argument, not evidence"). The Court is left with only Plaintiff's arguments challenging the contract, and as discussed, these arguments do not legitimately dispute the validity of the contract or the arbitration agreement.

Second, Plaintiff does not argue that his claims fall outside the scope of the agreement. The terms of the agreement state:

> Any claim or dispute, whether in contract, tort, statute or otherwise . . . between you and us . . . which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by court action.

(Dkt. No. 42 at 8.) Here, Plaintiff explicitly states his lawsuit is for "breach of contract and/or conversion." (Dkt. No. 1-2 at 3.) He specifically alleges Santander has not "present[ed] and/or exhibit[ed]" the "original instrument" for Plaintiff's inspection, despite Plaintiff's request and that Santander "refuse[s] to cease their involvement with the vehicle." (*Id.* at 3–4.) Put another way, Plaintiff signed the sales contract to purchase the vehicle, the contract was validly assigned to Santander (*see* Dkt. No. 42 at 9), and now Plaintiff sues Santander for claims arising out of the purchase and the contract itself. (Dkt. No. 1-2.) Plaintiff's contract and tort claims thus fall squarely within the scope of the arbitration agreement.

---

[3] The Court also questions the true nature of this document. It shows a timestamp at the top dated January 25, 2024, but at the bottom of the document, in presumably Plaintiff's own handwriting, is an attestation that the document was signed on December 31, 2023. (*See* Dkt. No. 52 at 14.) There is no stamp or mark on the document that indicates it was ever filed with the Washington State Department of Licensing. (*Id.*)

ORDER ON MOTION TO COMPEL ARBITRATION (DKT. NO. 41) - 6

1    Courts must "enforce [arbitration agreements] according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Santander's motion to compel arbitration (Dkt. No. 41) is GRANTED. The Court STAYS the case as to Defendant Santander accordingly. The Parties SHALL file a joint status report within 30 days after the arbitration is completed informing the Court whether it should dismiss Santander as a defendant or reopen the case against Santander based on the arbitration decision.

Dated this 18th day of November 2025.

David G. Estudillo
United States District Judge