UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WALTER SHAUNE SILVA, | CASE NO. 3:24-cv-06057-DGE |
| Plaintiff, | ORDER ON MOTION TO LIFT STAY (DKT. NO. 67) |
| v. | |
| SANTANDER CONSUMER USA INC. et al., | |
| Defendant. | |

## I       INTRODUCTION

Before the Court is Plaintiff's motion to lift the arbitration stay (Dkt. No. 67) that was put in place by the Court on December 15, 2025, when it granted the motion to compel arbitration filed by Defendant Santander Consumer USA Inc. ("Santander") (Dkt. No. 55).  For the reasons that follow, Plaintiff's motion is DENIED.

## II       BACKGROUND

On September 20, 2024, Plaintiff, who is proceeding pro se, filed this lawsuit in Kitsap County District Court against Santander and three Credit Reporting Agencies: TransUnion, LLC,

ORDER ON MOTION TO LIFT STAY (DKT. NO. 67) - 1

Experian Information Solutions, Inc., and Equifax Information Services, LLC (collectively, the "CRAs"). (Dkt. No. 1-2 at 2.) Plaintiff's complaint appeared to allege claims for breach of contract, conversion, and violation of the Fair Credit Reporting Act related to an auto-finance contract. (*Id.* at 3, 6.) TransUnion LLC removed the case on December 27, 2024, based on federal question jurisdiction because Plaintiff invoked the Fair Credit Reporting Act. (Dkt. No. 1.)

Relevant here, Santander moved to compel arbitration on September 16, 2025. (Dkt. No. 41.) It argued the sales contract underlying the dispute included a valid and enforceable arbitration agreement and that Plaintiff's claims fell within the scope of the agreement. (*Id.* at 2–3.) The Court granted Santander's motion for two reasons: First, Plaintiff did not dispute the validity of the arbitration agreement, nor did he dispute that the sales contract he signed included an arbitration agreement. (Dkt. No. 55 at 4–5.) His only argument as to the validity of the arbitration agreement was that he "never knowingly signed" an original contract with the words "'non-authoritative' stamped on every page." (*Id.* at 5) (quoting Dkt. No. 44 at 1). Second, Plaintiff did not argue that his claims fell outside the scope of the arbitration agreement and the Court determined that, by the plain language of the contract, they did. (Dkt. No. 55 at 6.) The Court stayed this case as to Santander and ordered the Parties to file a joint status report within 30 days of the conclusion of arbitration "informing the Court whether it should dismiss Santander as a defendant or reopen the case against Santander based on the arbitration decision." (*Id.* at 7.)

Plaintiff now moves to lift the arbitration stay. (Dkt. No. 67.) He asserts three reasons why the stay should be lifted. First, he argues that Santander forfeited its right to maintain the arbitration stay because it "fail[ed] to initiate arbitration for more than two months after

obtaining" relief from the Court. (*Id.* at 3.) Plaintiff argues Santander's "silence" as to the initiation of arbitration "confirms that arbitration is not being pursued in good faith." (*Id.*) Second, Plaintiff asserts the stay has undermined judicial economy and has prejudiced him, because it "indefinitely delay[s] access to any forum[,]" meaning Plaintiff is now left without a means to advance his claims. (*Id.* at 3–4.) And finally, Plaintiff also raises the argument that his "FCRA and FDCPA claims fall outside the arbitration agreement."[1] (*Id.* at 2.)

In response, Santander asserts it has not waived its right to arbitrate because it sought—and was granted—its motion to compel Plaintiff's claims arbitration. (Dkt. No. 69 at 3–4.) Further, Santander points out it is Plaintiff's obligation under American Arbitration Association ("AAA") rules to initiate arbitration, because he is the party bringing the lawsuit. (*Id.* at 4, 7.) As to Plaintiff's FCRA and FDCPA claims, Santander asserts that those claims were never brought against Santander and were first leveraged against the CRAs in Plaintiff's amended complaint, which was filed *after* the Court compelled Plaintiff's claims against Santander into arbitration. (Dkt. No. 69 at 6); (*Compare* Dkt. No. 55 (granting motion to compel arbitration on November 18, 2025) *with* Dkt. No. 56 (Plaintiff's first amended complaint filed December 5, 2025).) Plaintiff did not file a reply. This matter is now ripe for disposition.

### III      DISCUSSION

Federal courts may lift a stay pending arbitration upon a finding that "the applicant for the stay is . . . in default in proceeding with such arbitration." 9 U.S.C. § 3 (allowing for district court to stay proceedings based "on application of one of the parties" seeking arbitration). This "ensures that the parties can return to federal court if arbitration breaks down or fails to resolve

---

[1] The Fair Credit Reporting Act ("FCRA") is codified at 15 U.S.C. § 1681 *et seq.*; the Fair Debt Collection Practices Act ("FDCPA") is codified at 15 U.S.C. § 1692 *et seq.*

ORDER ON MOTION TO LIFT STAY (DKT. NO. 67) - 3

the dispute." *Smith v. Spizzirri*, 601 U.S. 472, 477 (2024).  The question of "whether a party has defaulted in proceeding with arbitration is a factual matter that rests within the discretion of the district court." *Christopher v. Santander Consumer USA, Inc.*, Case No.: 3:23-cv-01608-JAH-DEB, 2025 WL 2780171, at *2 (S.D. Cal. Sept. 29, 2025) (citing *Sink v. Aden Enter., Inc.*, 352 F.3d 1197, 1199–2000 (9th Cir. 2003) (internal citation omitted)).  Under the Federal Arbitration Act ("FAA"), after arbitration is ordered, a federal court may retain jurisdiction "to the extent necessary to prevent a complete breakdown of the process." *Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 653 (9th Cir. 2001) (citing 9 U.S.C. § 3).  "An arbitration will be deemed to have broken down or failed to resolve a dispute when no adjudication of the claims in arbitration have taken place within a reasonable amount of time." *Cristopher*, 2025 WL 2780171, at *2 (citation omitted).  The "key issue" is "'whether plaintiff or defendant, or both, were responsible in the delay in initiating arbitration proceedings.'" *Id.* (quoting *Miller v. Aaacon Auto Transp., Inc.*, 545 F.2d 1019, 1020 (5th Cir. 1977)).

Here, the Parties disagree about whose responsibility it is to initiate arbitration.  Plaintiff asserts "Santander appears to have taken no steps to initiate arbitration" since the stay was granted in November 2025.  (Dkt. No. 67 at 3.)  Plaintiff states he has sent "multiple communications" to Santander regarding arbitration, including an email on December 21 which he attached to his motion.  (*Id.* at 3, 9.)  Santander states it "do[es] not have a record of receiving" this email from Plaintiff.  (Dkt. Nos. 69 at 5 n.5; 70 at 2.)  It disputes that Plaintiff reached out between the entry of the stay and Santander's receipt of Plaintiff's email from February 9, 2026, which is attached to a declaration in support of Santander's response.  (*See* Dkt. No. 70-1 at 2.)  Santander disagrees with Plaintiff's position that Santander must commence

arbitration: "[C]ontrary to Plaintiff's assertion, it is Plaintiff who has to initiate arbitration with the AAA, not Santander." (Dkt. No. 69 at 4.)

The Court has already found that the Parties entered into a valid and enforceable arbitration agreement and that Plaintiff's claims fell within the scope of the agreement. (*See* Dkt. No. 55.) The FAA now "requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Case law is split on which party bears the burden of initiating arbitration generally but suggests that the language of the contract should guide the inquiry. *See Christopher*, 2025 WL 2780171, at *3 (finding the defendant to be the party seeking arbitration because it initiated and received a favorable ruling on its motion to compel arbitration and the terms of the agreement provided that "'[t]he party initiating arbitration must choose'" from a list of arbitration Administrators). *But see Evitt v. Experian Info. Sols., Inc.*, Case No. 3:23-cv-05294-LK, 2024 WL 3226803, at *2 (W.D. Wash. June 28, 2024) (finding the plaintiff was responsible for initiating arbitration because an order granting a motion to compel arbitration "course-corrects" his failure to file in the proper forum, even though the terms of the agreement permitted either party to commence arbitration); *McGowan v. NetApp, Inc.*, Case No. No. 23-04291 WHA, 2024 WL 3970683, at *3 (N.D. Cal. Aug. 28, 2024) (holding that the claimant was responsible for initiating arbitration based on the language of the agreement but that decision "in no way holds that all plaintiffs under all agreements have the burden to initiate arbitration").

Here, the Parties' arbitration agreement reads, "[e]ither you or we may choose to have any dispute between us decided by arbitration and not in court or by jury trial." (Dkt. No. 42 at 8.) Though the agreement itself provides "[the consumer] may choose the American Arbitration Association . . . or any other organization to conduct the arbitration subject to our approval[]"

(*id.*), Santander points out that it specifically moved to compel arbitration of Plaintiff's claims before the AAA (*See* Dkt. No. 41 at 3) ("Plaintiff's claims against Defendant should be compelled to arbitration before the American Arbitration Association and this action stayed as to Defendant until the completion of such arbitration."). Further, Santander asserts Plaintiff "did not address, much less oppose," the request to arbitrate before the AAA, and that the Court did not specify otherwise in its order granting the motion to compel. (Dkt. No. 69 at 4 n.4.)

The Court concludes, for three reasons, that Plaintiff is the party responsible for initiating arbitration. First, though either party may initiate arbitration per the terms of the agreement (*see* Dkt. No. 42 at 8), the Court has already concluded, by way of granting Santander's motion to compel, that Plaintiff's claims were brought in an incorrect forum. (*See generally* Dkt. No. 55); *Evitt*, 2024 WL 3226803, at *2 ("That [the defendant] filed the motion [to compel arbitration] does not make it the 'party who intends to seek arbitration'; again, under the FAA, the point of [the defendant]'s motion was to compel [the plaintiff]'s compliance with the parties' written agreement."). Second, unlike the language in *Christopher*, where the party seeking to commence arbitration had the burden of selecting an Administrator, 2025 WL 2780171, at *3, the contract at issue here includes no such mandate. (*See* Dkt. No. 42 at 8.) Though either party may "choose" to have a dispute arbitrated, the contract does not put the onus on that party to do anything specific to start the proceedings. (*Id.*) Third, through Santander's uncontested request to proceed before the AAA (Dkt. No. 41 at 3)—and the Court's grant of that request—the arbitration agreement incorporates the applicable AAA rules. *See McGowan*, 2024 WL 3970683, at *2 ("the arbitration agreement also incorporated the institutional JAMS rules and requires that arbitration procedures 'be conducted in accordance with JAMS Employment Arbitration Rules and Procedures'"). The AAA rules do not define "initiating party" in the

context of a court-ordered arbitration. *See* AAA CONSUMER ARB. RULES & MEDIATION PROC., Rule R-4(a)(ii). However, the fact that under the agreement *either* party may choose to arbitrate, combined with the other considerations discussed above, points to Plaintiff as the party responsible for initiating arbitration. Further, this result avoids the "nonsensical" result discussed in *Evitt*, where the court noted the plaintiff "may not seek to benefit by filing his dispute in the wrong forum—thereby breaching the Terms [of the arbitration agreement]—and then forcing [the defendant] to either remedy his breach or else risk waiver." 2024 WL 3226803, at *2.

Plaintiff's argument that the arbitration stay should be lifted because his FCRA and FDCPA claims fall outside the scope of the arbitration agreement also fails. Plaintiff's initial complaint only leveraged claims of "breach of contract and/or conversion" against Santander.[2] (Dkt. No. 1-2 at 3.) When the Court granted the CRAs' motion for judgment on the pleadings, it permitted Plaintiff to amend his complaint to attempt to "address[] the deficiencies identified in *this order*[.]" (Dkt. No. 54 at 9) (emphasis added). It did *not* grant Plaintiff leave to amend his complaint as to Santander. As Santander points out, its motion to compel arbitration was granted

---

[2] Plaintiff did allege a FCRA violation claim in his initial complaint, though it was not clear whether that claim applied to all Defendants or just the CRAs. Plaintiff and the CRAs appeared to agree that the applicable provisions underlying his FCRA claim were 15 U.S.C. § 1681e(b) and § 1681i. (*See* Dkt. No. 54 at 4.) In any case, the Court notes that the relevant provisions both involve conduct by a *credit reporting agency*, which is defined in the statute as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." *Id.* § 1681a(f). Plaintiff did not argue, and the plain language of the statute does not support, a reading that Santander is subject to the provisions of §§ 1681e(b) and 1681i, because it is not engaged "in the practice of assembling or evaluating consumer credit information . . . for the purpose of furnishing consumer reports to third parties[.]" *Id.* § 1681a(f). This is further supported by the fact that in responding to Santander's motion to compel arbitration, Plaintiff only raised contract-related arguments. (*See* Dkt. Nos. 41, 52.)

ORDER ON MOTION TO LIFT STAY (DKT. NO. 67) - 7

on November 18, 2025, which stayed the case between Plaintiff and Santander.  (Dkt. No. 55.) Plaintiff then filed his first amended complaint on December 5, 2025.  (Dkt. No. 56.)

Though Plaintiff's amended complaint includes allegations against Santander (*see id.* at 14–15), those allegations are inoperative because the Court only ever granted Plaintiff leave to amend against the CRAs, and further, Plaintiff's case against Santander was stayed *before* he was granted leave to amend.  Santander argues that even if Plaintiff had properly asserted FCRA and FDCPA claims against it, those claims would fall within the scope of the Parties' arbitration agreement because the arbitration agreement explicitly includes statutory claims "aris[ing] out of . . . your credit application, purchase, or condition of this vehicle, this contract or any resulting transaction or relationship[.]"  (Dkt. No. 69 at 6) (citing Dkt. No. 42 at 8).  The Court agrees that even if it had granted Plaintiff leave to amend against Santander, any such amendment would be likely futile, because those claims appear to fall within the scope of the agreement.  "A proposed amendment will be rejected as futile 'if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'"  *Walters v. Superior Tank Lines Nw. Div., LLC*, Case No. C19-0191RSL, 2019 WL 3067299, at *1 (W.D. Wash. July 12, 2019) (quoting *Combs v. Lehman*, Case No. C08-5063 RJB/KLS, 2010 WL 1537289, at *1 (W.D. Wash. Apr. 15, 2010) (citation omitted)).  Plaintiff's argument, then, that his FCRA and FDCPA claims against Santander are not subject to arbitration is wholly unavailing and even if properly raised, would be subject to dismissal.

As a final matter, the Court notes that the Parties disagree on the extent to which Plaintiff has attempted communication with Santander in the past few months.  (*See* Dkt. Nos. 67 at 3, 9; 69 at 5 n.5; 70 at 2; 70-1.)  Regardless of which party has the burden of initiating arbitration, the Court reminds the Parties that they "still bear[] minimum duties inherent in any civil proceeding

ORDER ON MOTION TO LIFT STAY (DKT. NO. 67) - 8

to respond to an opposing party's requests to meet-and-confer within a reasonable amount of time." *Christopher*, 2025 WL 2780171, at *3.

Therefore, though the Court has the inherent authority to retain control over this matter to the extent necessary to prevent a complete breakdown in the arbitration process, *Morris*, 942 F.2d at 653, it finds the best path forward in this case is to order the parties to comply with the order staying the proceedings pending the outcome of arbitration.  (*See* Dkt. No. 55 at 7.)  The Court therefore ORDERS both parties to engage in arbitration in good faith.  Plaintiff SHALL initiate arbitration no later than **May 26, 2026**.  On or before **June 8, 2026**, the Parties SHALL file a joint status report on the status of scheduling arbitration.

The Clerk is directed to calendar this event.

Dated this 24th day of March 2026.

David G. Estudillo
United States District Judge

ORDER ON MOTION TO LIFT STAY (DKT. NO. 67) - 9